UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**KEITH THIBODEAUX**                                          **CIVIL ACTION**

**VERSUS**                                                    **NO. 21-443-BAJ-SDJ**

**T.H. MARINE SUPPLIES, LLC**

## ORDER

Before the Court is a Motion to Compel (R. Doc. 23) filed on September 15, 2022, by Plaintiff Keith Thibodeaux. Defendant T.H. Marine Supplies, LLC, filed an Opposition to this Motion (R. Doc. 29) on October 6, 2022. Plaintiff, with leave of Court, filed a Reply Memorandum in support of his Motion to Compel (R. Doc. 32) on October 24, 2022. For the reasons set forth below, this Motion is granted.

Plaintiff initiated this litigation against Defendant on June 21, 2021, filing suit in the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana.[1] On August 2, 2021, Defendant removed the case to this Court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.[2] This case arises from an incident that occurred on December 3, 2020, in which Plaintiff, while fishing, allegedly was injured when the cable of his G-Force Trolling Motor Handle and Cable ("G-Force") broke when Plaintiff released his trolling motor.[3] Defendant manufactures, markets, and sells the G-Force.[4]

---

[1] R. Doc. 1-2 at 2-5.
[2] R. Doc. 1 at 2-3.
[3] R. Doc. 1-2 at 2.
[4] *Id.*

In his Motion, Plaintiff states that he seeks an order compelling Defendant "to adequately respond to the Second Set of Requests for Production of Documents served on August 5, 2022, as well as to provide deposition testimony from T.H. Marine Supplies, LLC's CEO related to the documents requested in discovery."[5] Plaintiff, who has asserted a claim for punitive damages under general maritime law, seeks financial information from Defendant, arguing that Defendant's financial condition "is relevant to the calculation of punitive damages if awarded."[6]

## I.    Law and Analysis

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "For purposes of discovery, relevancy is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue related to the claim or defense of any party." *Tingle v. Hebert*, No. 15-626, 2016 WL 7230499, at *2 (M.D. La. Dec. 14, 2016) (quoting *Fraiche v. Sonitrol of Baton Rouge*, 2010 WL 4809328, at *1 (M.D. La. Nov. 19, 2010)) (internal quotations omitted). But the court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in

---

[5] R. Doc. 23 at 1.
[6] R. Doc. 23-1 at 1.

the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

"[A] party served with written discovery must fully answer each interrogatory or document request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory or document request is not objectionable and the subject of the answer or response, and affirmatively explain whether any responsive information or documents have been withheld." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018) (citation omitted). If a party fails to respond fully to discovery requests in the time allowed by the Federal Rules of Civil Procedure, the party seeking discovery may move to compel responses and for appropriate sanctions under Federal Rule of Civil Procedure 37. *See, e.g., Lauter v. SZR Second Baton Rouge Assisted Living, LLC*, No. 20-813, 2021 WL 2006297 (M.D. La. May 19, 2021). Each of Plaintiff's requests is discussed, in turn, below.

The party filing the motion to compel "bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Tingle*, 2016 WL 7230499, at *2 (quoting *Mirror Worlds Techs., LLC v. Apple Inc.*, 2016 WL 4265758, at *1 (E.D. Tex. Mar. 17, 2016)). "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad or unduly burdensome or oppressive, and thus should not be permitted." *Id.* (quoting *Mirror Worlds*, 2016 WL 4265758, at *1). *See also Wymore v. Nail*, No. 14-3493, 2016 WL 1452437, at *1 (W.D. La. Apr. 13, 2016) ("Once a party moving to compel discovery establishes that the materials and information it seeks are relevant or will lead to the discovery of admissible evidence, the burden rests upon the party

resisting discovery to substantiate its objections."). Further, "[a] trial court enjoys wide discretion in determining the scope and effect of discovery." *Sanders v. Shell Oil Co.*, 678 F.2d 614, 618 (5th Cir. 1982) (citation omitted).

### A. The Scope of Discovery Being Sought

The first issue before the Court is the scope of the discovery actually being sought by Plaintiff in his Motion to Compel. As specifically stated in the Motion, Plaintiff seeks copies of Defendant's annual reports, profit and loss statements, financial statements, and federal income tax returns for the years 2018 through 2021, as well as deposition testimony from Defendant's CEO related to these documents.[7] However, Plaintiff concedes that this request is significantly pared down from the requests it initially made in its Second Set of Requests for Production of Documents. As summarized by Plaintiff, he initially sought: "For the years 2016 to the present day, the discovery requests sought TH Marine's annual reports (audited and unaudited); balance sheets; profit and loss statements; income statements; federal tax returns; audited financial statements; statements of cash flow; and market, sales and profitability forecasts[,]" plus "TH Marine's accounts receivable from and accounts payable to any related entities; financial statements or projections in loan applications; officers' compensation for the last five years; and year-to-date financial statements for most recent month available."[8]

In its Opposition, Defendant bafflingly asserts that, "despite offering to 'make do' with T.H. Marine's annual reports, financial statements, profit-and-loss statements, and federal income-tax returns for the five (5) year period running from 2018 through 2021, Plaintiff now renews his demand for all of the financial information identified in his Second Set of Requests for

---

[7] R. Doc. 23-1 at 2.
[8] *Id.* at 3.

Production."⁹  While Plaintiff does reproduce his initial Requests for Production in his Motion in order to comply with Local Civil Rule 37, Plaintiff states unequivocally that he has "has narrowed his request to seek **four** categories of documents over a **four-year** timeframe, along with related deposition testimony."¹⁰  As such, the Court will consider Plaintiff's pared-down request, *i.e.*, the four categories of information spanning four years along with deposition testimony by Defendant's CEO regarding same, as being the subject of his Motion to Compel.

      **B.**      **Whether the Information Being Sought is Relevant**

Having determined the scope of the information being requested by Plaintiff, the Court now turns to whether the information being sought meets Rule 26's relevancy requirement.  As argued by Defendant in its Opposition, because punitive damages are not recoverable in this case, evidence of Defendant's financial situation is not relevant here.¹¹  Per Defendant: "Plaintiff's motion to compel cites no binding authority permitting the recovery of punitive damages on a product-liability claim under either Louisiana or general maritime law, and with good reason: no such authority exists."¹²  Defendant continues, "[s]imply put, T.H. Marine's net worth could have a bearing on this case *only if* Plaintiff actually asserted a claim entitling it to the recovery of punitive damages.  Plaintiff asserts no such punitives-eligible claim."¹³  The Court disagrees.

To be clear, the issue of whether Plaintiff is entitled to punitive damages is not before the Court, and the Court specifically declines to make such a determination here.  Rather, the Court here is tasked only with determining if recovery of punitive damages is a possibility, however

---

⁹ R. Doc. 29 at 3.
¹⁰ R. Doc. 32 at 1 (emphasis in original).
¹¹ R. Doc. 29 at 4.
¹² *Id.* at 5.
¹³ *Id.*

slight, such that information pertaining to same would be considered relevant to Plaintiff's claim in accordance with Rule 26.

Plaintiff specifies in his Motion to Compel that he is proceeding, and thereby seeking punitive damages, "under general maritime law."[14] "Under general maritime law, punitive damages may be available if the plaintiff proves that the defendant's 'behavior … is more than merely negligent,' but rather was so egregious as to constitute gross negligence, reckless or callous disregard for the rights of others, or actual malice or criminal indifference." *Gonzalez v. Sea Fox Boat Co. Inc.*, 582 F.Supp.3d 378, 381 (W.D. La. 2022) (quoting *Maritrans Operating Partners v. Diana T*, 1999 WL 144458, at *7 (E.D. La. Mar. 15, 1999)). The Fifth Circuit Pattern Civil Jury Instructions support this, providing that, under general maritime law, punitive damages may be granted "against a defendant if that defendant has acted willfully and wantonly." Pattern Civ. Jury Instr. 5th Cir. 4.9 (2020); *Gonzalez*, 582 F.Supp.3d at 384. The availability of punitive damages under general maritime law also has been recognized by the Supreme Court. *See Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 424 (2009) ("Because punitive damages have long been an accepted remedy under general maritime law, and because nothing in the Jones Act altered this understanding, such damages for the willful and wanton disregard of the maintenance and cure obligation should remain available in the appropriate case as a matter of general maritime law.").

In its Opposition, Defendant cites to the Supreme Court's decision in *The Dutra Group v. Batterton*, 139 S.Ct. 2275 (2019) as "call[ing] into serious doubt whether punitives are recoverable on product-liability claims."[15] However, in *The Dutra Group*, the Supreme Court specified that "because there is no historical basis for allowing punitive damages in unseaworthiness actions, and in order to promote uniformity with the way courts have applied parallel statutory causes of

---

[14] R. Doc. 23-1 at 1.
[15] R. Doc. 29 at 6.

action, we hold that punitive damages remain unavailable in unseaworthiness actions." 139 S.Ct. at 2278. Thus, its holding in *The Dutra Group* is clearly and specifically limited to unseaworthiness actions, which are not at issue here.

As such, the Court now finds only that punitive damages may be available to Plaintiff under maritime law, thereby making Defendant's financial information relevant to this litigation. *See Rafael Hurtado v. Balerno Int'l Ltd.*, No. 17-62200, 2019 WL 917404, at *2 (S.D. Fla. Feb. 25, 2019) ("And, where there is a claim for punitive damages, 'a defendant's financial condition becomes relevant because the wealth of the defendant is a factor for consideration in determining the reasonableness of a punitive award.'"). "When a punitive damages claim has been asserted by the plaintiff, a majority of federal courts permit pretrial discovery of financial information of the defendant without requiring plaintiff to establish a prima facie case on the issue of punitive damages." *Briones v. Smith Dairy Queens, Ltd.*, No. 08-48, 2008 WL 4630485, at *5 (S.D. Tex. Oct. 16, 2008) (quoting *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.,* 130 F.R.D. 149, 151 (D. Kan. 1990)). The allegations in Plaintiff's Amended Complaint are sufficient to allow discovery of financial information relevant to the issue of punitive damages.[16]

### C. Limitations on Discovery Being Sought

Having determined the relevance of the information being sought, the Court now turns to limitations thereof, both in terms of the types of documents requested as well as the time frame for which they are requested. In its Opposition, Defendant argues that "this Court ought not to compel the disclosure of 7 years' worth of sensitive financial information" and that "the most net-worth discovery to which Plaintiff is entitled is what he has already received: T.H. Marine's profit-and-loss statement, financial statements, and federal-income tax return for the most recent full year."[17]

---

[16] *See, e.g.,* R. Doc. 7 at 3.
[17] R. Doc. 29 at 7, 9.

As noted above, Plaintiff no longer seeks Defendant's financial information for a seven-year period. Rather, in addition to deposition testimony, he seeks four types of documents for a four-year period: annual reports, financial statements, profit and loss statements, and federal income tax returns for the years 2018 through 2021.[18]

In the cases cited by Plaintiff in its Reply, courts allowing discovery of financial information for purposes of punitive damages have limited the temporal scope of said documents to three years. For example, in *Callais v. United Rentals North America, Inc.*, this Court, in an employment action, compelled production of the defendant's annual reports, financial statements, and federal income tax returns for a three-year period. *Callais,* No. 17-312, 2018 WL 6517446, at *6 (M.D. La. Dec. 11, 2018). Recognizing that "[c]ourts do not seem to have established a universally-applicable relevant timeframe for financial documents of a defendant in the context of punitive damages," it compared two main approaches—limiting financial documents to only the most recent versus compelling documents from the three years prior to the litigation. *Id.* (comparing *Roberts v. C.R. England, Inc.*, 2018 WL 1305058, at *2 (D. Utah Mar. 12, 2018) with *U.S. E.E.O.C. v. Denham Springs Pub. Co.*, 2012 WL 262268, at **2-3 (M.D. La. Jan. 27, 2012)). While conceding both approaches have merit, the Court found production of financial documents for a three-year period appropriate, reasoning:

> First, the most recent documents are the most relevant due to the deterrent purpose of punitive damages. As punitive damages are not meant to compensate a plaintiff for a wrong committed against him, the time period of the wrong has little relevance to the question of punitive damages. Second, a three-year period of financial documents will provide the fact finder with a more accurate picture of a defendant's overall financial position, especially in a situation where a defendant may have had a single good—or bad—financial year. The most recent financial documents for a three-year period of time adequately contemplates the purpose of punitive damages for which those documents are sought, balanced with proportionality and relevancy considerations as outlined herein.

---

[18] R. Doc. 23-1 at 2.

*Id.*; *see Rafael Hurtado*, 2019 WL 917404, at *2 (finding "only current financial records … relevant to a claim for punitive damages" and requiring production of "only financial documents for the most recent three years").

Defendant argues in its Opposition that, in the context of Title VII cases, "Courts have confined the temporal scope of that net worth discovery to the duration of the plaintiff-employee's employment."[19] Thus, per Defendant, "the most net-worth discovery to which Plaintiff is entitled is what he has already received," *i.e.*, the financial documents for "the most recent full year" already provided by Defendant. The Court finds this argument without merit. First, Plaintiff is not an employee of Defendant, meaning this employment-term limitation is not applicable here. Second, and more importantly, the reasoning by this Court in *Calais* specifically belies this argument. As this Court made clear, "[a]s punitive damages are not meant to compensate a plaintiff for a wrong committed against him, the time period of the wrong has little relevance to the question of punitive damages." *Callais*, 2018 WL 6517446, at *6.

Here, as stated above, Plaintiff is seeking Defendant's financial documents for the years 2018, 2019, 2020, and 2021.[20] Recognizing this four-year request is longer than that usually granted by Court, Plaintiff explains that "due to the unique impact of COVID-19 on businesses, [he] requested documents from a 4-year period in order to provide a more accurate picture of T.H. Marine's overall financial position."[21] The Court finds this argument persuasive, as the years encompassing the pandemic may not accurately reflect Defendant's typical financial position and additional production will not be overly burdensome to Defendant. Defendant is instructed to

---

[19] R. Doc. 29 at 9, citing *Tingle v. Hebert*, No., 15-626, 2017 WL 2335646, at *5 (M.D. La. May 30, 2017).
[20] R. Doc. 32 at 2.
[21] *Id.* at 3 n. 4.

provide pertinent financial information, as set forth below, for the years 2018 through 2021, to the extent that information has not already been provided.

Having resolved the temporal scope of the discovery request, the Court now turns to the specific categories of documents requested. For the four years designated, Plaintiff seeks Defendant's annual reports, financial statements, profit and loss statements, and federal income tax returns. In its Opposition, Defendant does not challenge the types of documents being requested. The Court, therefore, considers the specific categories requested unopposed and grants Plaintiff's request.[22]

As a final matter, Defendant also does not challenge Plaintiff's request for deposition testimony regarding the documents to be produced in its Opposition. Because this request is not opposed, the Court will grant Plaintiff's request and instruct Defendant to provide the requested supporting deposition testimony.

## II.    Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Compel (R. Doc. 23) is **GRANTED**. Within 14 days of the date of this Order, Defendant must provide Plaintiff with copies of its annual reports, financial statements, profit and loss statements, and federal income tax returns for the years 2018, 2019, 2020, and 2021, to the extent they have not already been provided.

---

[22] The Court notes that, in its Opposition, Defendant claims that Plaintiff seeks financial information pertaining "not just to T.H. Marine, but T.H. Marine's corporate affiliates and officers." R. Doc. 29 at 8. However, Plaintiff specifies in his Reply that "these discovery requests[, *i.e.,* for financial information of Defendant's corporate affiliates and officers,] were not made a part of Plaintiff's Motion to Compel." R. Doc. 32 at 2 n. 2. Because there is no disagreement between the Parties on this issue, there is nothing for the Court to resolve regarding this argument.

**IT IS FURTHER ORDERED** that Defendant is to provide supporting deposition testimony from its CEO relating to these documents within 30 days of their production.

Signed in Baton Rouge, Louisiana, on January 17, 2023.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**