UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KEITH THIBODEAUX                                               CIVIL ACTION

VERSUS

T-H MARINE SUPPLIES, LLC                                  NO. 21-00443-BAJ-SDJ

RULING AND ORDER

    Plaintiff Keith Thibodeaux describes himself as an avid crappie fisherman. In December 2020, he was fishing aboard his aluminum flat-bottom boat in the Atchafalaya Basin. The boat was equipped with a trolling motor, which is an electric motor used to control and maneuver a boat through water. Plaintiff claims that the crappies weren't biting, and so he decided to move to a better spot. He strapped down his tackle and attempted to stow his trolling motor. When he pulled back on the trolling motor's handle—an aftermarket "G-Force" handle and cable system manufactured by Defendant T-H Marine Supplies, LLC ("THM")—the cable broke, allegedly "throwing him to the hard floor of his boat" and causing him to suffer "severe and traumatic injuries. (Doc. 7 at ¶ 4).

    In this action, Plaintiff seeks damages from THM, alleging that the G-Force is defective. Now before the Court is THM's **Motion for Partial Summary Judgment (Doc. 34),** which argues that Plaintiff's claims for punitive damages, failure to warn, *res ipsa loquitor*, and lost wages must be dismissed because they fail as a matter of

1

law. Plaintiff has no objection to the dismissal of his *res ipsa loquitor* claim,[1] but otherwise opposes Defendant's Motion. (Doc. 36). For written reasons herein, Defendant's Motion will be granted in part and denied in part.

I.  BACKGROUND

A. Summary Judgment Evidence

The following facts are drawn from the Defendant's Uncontested Statement of Material Facts (Doc. 34-5, "DEF SOF"), Plaintiff's Opposing Statement of Material Facts (Doc. 36-1, "Thibodeaux SOF"), the undisputed facts set forth in the Parties' Joint Pretrial Order (Doc. 38 at § F, "Joint PTO"), and the record evidence submitted in support of such pleadings.

As noted, Plaintiff is a fisherman. (*See* Doc. 36 at p. 3). Defendant is a limited liability company that, among other things, designs, manufactures, and delivers into commerce a device called the G-Force Trolling Motor Handle and Cable ("G-Force"). (*See* DEF SOF ¶¶ 1, 5). The G-Force is a "stainless cable with a wide-grip handle for the trolling motor" on boats. (*See* Doc. 35-3 at p. 28). The idea for the G-Force came from Gerald Swindle, "a fisherman of notoriety." (*See id.* at p. 32). On a date not provided in the Parties' pleadings, Mr. Swindle and Luke Duncan, Defendant's Regional Sales Manager, presented the idea for the G-Force to Greg Buie, Defendant's Executive Vice President. (*See id.* at p. 37). From there, it took Defendant approximately 30 days to manufacture the G-Force. (Thibodeaux SOF ¶ 5).

---

[1] "Plaintiff agrees that the *res ipsa loquitur* doctrine is unnecessary to prove his claims against TH Marine." (*See* Doc. 36 at p. 21).

2

When asked about the manufacturing process during his deposition, Mr. Buie testified:

> We were—as far as the cable goes, they said, we've got to have something stronger in a cable. We had been selling a stainless-steel restraint cable for almost the history of the company for—I'm there 30 years, and they were selling that cable when I come [sic] on board. That was from that Sanlo [sic] manufacturing that was the first cable. And so, okay, we need [sic] the cable to fit the size of the rope that we need [sic]. And we got samples of the cable. I go to [sic] Lowe's myself and look[ed] in the lawnmower section and see [sic] what kind of handles are available. And we found a handle there that had the big grip on it and everything. So we contacted that manufacturer and purchased those handles from them and started manufacturing it ourself [sic] right there. Probably in—I would say probably within 30 days. The first handles we bought, we bought all the Lowe's out [sic] to do sampling and testing and sending it to the different fisherman and stuff and say, try this and see what you think, let us know how it turns out.

(*See* Doc. 35-3 at pp. 38–39). In terms of "in-house" or internal testing of the G-Force, Kelvin Campbell, Defendant's New Product Development Director, testified that "someone within [the] company…probably hooked [the G-Force] up to a forklift with a scale and pulled on it…" to test the cable strength. (*See* Doc. 35-3 at p. 126). Subsequently, in 2012, Defendant began to market and sell the G-Force. (*See* Doc. 35-3 at p. 127).

On March 6, 2020, Plaintiff purchased a G-Force from Bayside Tackle and Trolling Motor Repair ("Bayside"). (DEF SOF ¶ 6; Doc. 36 at p. 3). The G-Force's packaging included instructions for installation but excluded warnings or guidance about when the cable or handle ought to be replaced. (Thibodeaux SOF ¶ 6). Plaintiff did not read the instructions or install the G-Force himself. (*See id.*). Instead, after Plaintiff purchased the G-Force, Brad Rodrigue, a Bayside employee, installed it to

3

Plaintiff's trolling motor, mounted aboard Plaintiff's 19-foot aluminum flat-bottom boat. (DEF SOF ¶ 9).

On December 3, 2020, Plaintiff alleges he was fishing in the Atchafalaya Basin without any luck when he decided to pull in his trolling motor and move to a better spot. (Joint PTO at § F(12)). Mr. Thibodeaux strapped down his tackle, and attempted to pull up his trolling motor, but when he pulled back on the G-Force handle, the G-Force cable broke, (*id.*), allegedly "throwing him to the hard floor of his boat" and causing him to suffer "severe and traumatic injuries. (Doc. 7 at ¶ 4). Plaintiff's injuries allegedly required him to "undergo surgeries on both shoulders and extensive medical treatment." (*See* Doc. 36 at p. 1).

## B. Procedural History

Plaintiff initiated this action on June 21, 2021 in the 19th Judicial District Court of the State of Louisiana. (*See* Doc. 1-2 at p. 1). He alleges, *inter alia,* that Defendant's actions "in regard to the design, manufacture and selling of the G-Force were intentional and/or wanton and reckless and [that Defendant] had a conscious disregard for the rights of others." (*See* Doc. 7 ¶ 11). Plaintiff seeks a range of damages, including lost wages, impairment of future earning capacity, and punitive damages. (*See* Doc. 7 ¶ 16). Defendant removed the case to this Court on August 2, 2021, and now moves for partial summary judgment on Plaintiff's claims for punitive damages, failure to warn, *res ipsa loquitor*, and lost wages. (Docs. 1, 34).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure ("Rule") 56 provides that, "[t]he court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether the movant is entitled to judgment as a matter of law, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in their favor. *See Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). After a party moves for summary judgment, the non-movant must set forth specific facts showing there is genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "At this stage, the Court does not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes." *Minnis v. Bd. Of Sup'rs of Louisiana State Univ. & Agric. & Mech. Coll.*, 55 F. Supp. 3d 864, 873 (M.D. La. 2014). Rather, the Court simply asks whether the evidence in the record is sufficient for a reasonable jury, "drawing all inferences in favor of the non-moving party, could arrive at a verdict in that party's favor." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). If the answer is yes, the motion for summary judgment must be denied. *See id.*

However, the non-movant cannot satisfy their evidentiary burden by some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the non-movant "fails to make a showing sufficient to establish

the existence of an element essential to that party's case," summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

## III. DISCUSSION

### A. Issues of Fact Preclude Summary Judgment on Plaintiff's Punitive Damages Claim

#### i. Punitive damages are available in a products liability action brought under general maritime law

Defendant argues that Plaintiff's claim for punitive damages must fail because there is no binding authority that holds punitive damages are recoverable in a product-liability claim brought under general maritime law. (*See* Doc. 34-2 at p. 3). In support, Defendant cites to *The Dutra Group v. Batterton*, in which the Supreme Court held that "because there is no historical basis for allowing punitive damages in unseaworthiness actions, and in order to promote uniformity with the way courts have applied parallel statutory causes of action, we hold that punitive damages remain unavailable *in unseaworthiness actions*." 139 S. Ct. 2275, 2278 (2019) (emphasis added). However, as argued by Plaintiff, and as explained by the Magistrate Judge in a prior ruling, the Supreme Court's *Dutra Group* holding is clearly limited to unseaworthiness actions, which are not at issue here. (*See* Doc. 36 at p. 11; Doc. 37 at pp. 6–7). "Unseaworthiness is a claim under general maritime law based on the vessel owner's duty to ensure that *the vessel is reasonably fit to be at sea*." *Beech v. Hercules Drilling Co., L.L.C.*, 691 F.3d 566, 570 (5th Cir. 2012) (emphasis added) (internal citations omitted). Here, Plaintiff has made no allegations about a vessel owned by Defendant, and Defendant points to no case law that applies

6

an unseaworthiness analysis to a products liability claim brought under general maritime law.

Furthermore, contrary to Defendant's argument, the Supreme Court has held that "punitive damages have long been an accepted remedy under general maritime law." *Atlantic Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 424 (2009). Citing *Townsend*, other courts have held that punitive damages are recoverable in a products liability action brought under general maritime law. *See, e.g., Morgan v. Almars Outboards, Inc.*, 316 F. Supp. 3d 828 (D. Del. 2018) (finding that punitive damages are recoverable in a products liability case arising under general maritime law); *Pritt v. Air & Liquid Sys. Corp.*, No. 19 CIV. 10651 (KPF), 2022 WL 902684 *18 (S.D.N.Y. Mar. 28, 2022) (same). Consequently, Defendant's argument that punitive damages are unavailable in a product liability claim brought under general maritime law fails to pass muster.

### ii. Plaintiff presents sufficient evidence that a genuine issue of material fact exists

Defendant further asserts that Plaintiff "presents insufficient evidence in support of [his] punitive damages claim." (*See* Doc. 34-2 at p. 5). After reviewing the evidence put forth by Plaintiff, this argument is also unavailing at this stage.

"Under general maritime law, punitive damages may be available if the plaintiff proves that the defendant's behavior ... is more than merely negligent, but rather was so egregious as to constitute gross negligence, reckless or callous disregard for the rights of others, or actual malice or criminal indifference." *Gonzalez v. Sea Fox Boat Co. Inc.*, 582 F. Supp. 3d 378, 381–82 (W.D. La. 2022) (internal citations

7

omitted). This is a "highly fact-intensive" inquiry. *Gonzalez*, 378 F. Supp. 3d at 386 (*citing Complaint of Merry Shipping, Inc.*, 650 F.2d 622 (5th Cir. 1981)). In *Exxon Shipping*, the Supreme Court identified two types of conduct constituting recklessness:

> (1) "the actor knows or has reason to know…of facts which create a high degree of risk of … harm to another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to, that risk;" and

> (2) "the actor has such knowledge, or reason to know, of the facts, but does not realize or appreciate the high degree of risk involved, although a reasonable man in his position would do so."

554 U.S. 471, 493–94 (*citing* Restatement (Second) of Torts § 500, cmt. a (1965)). "An accumulation or series of negligent acts or omissions can and should be viewed together to determine whether the defendant has acted out of gross negligence, willful misconduct, or a wanton or reckless disregard." *Gonzalez v. Sea Fox Boat Co. Inc.*, No. 2:19-CV-00130, 2022 WL 1207297 *4 (W.D. La. Apr. 22, 2022) (*citing Clements v. Steele*, 792 F.2d 515, 517 (5th Cir. 1986)).

Here, Defendant maintains that "there is no evidence that [it] engaged in a pattern of such violations as would demonstrate a callous disregard for others' rights." (*See* Doc. 34-2 at p. 5). However, Plaintiff has identified twenty-two acts or omissions by Defendant in designing and manufacturing the G-Force that he argues "constitute a pattern of negligence that ultimately leads to the conclusion that [Defendant] had a reckless or callous disregard for the rights of others." (*See* Thibodeaux SOF at pp. 7–10; Doc. 36 at p. 15). Defendant failed to submit a Reply that controverts this evidence. Absent argument from Defendant, and viewing

8

Plaintiff's facts in the light most favorable to him, the Court concludes that a reasonable jury, based on the evidence currently in the record, could reach a verdict in Plaintiff's favor on the punitive damages claim.

### B. Issues of Fact Preclude Summary Judgment on Plaintiff's Failure to Warn Claim

Defendant also seeks summary judgment on Plaintiff's failure to warn claim. Defendant argues that Plaintiff testified that "he did not recall reading the instructions or reviewing any warnings when he purchased the G-Force," and that this "testimony alone establishes that the adequacy (or inadequacy) of the instructions and/or warning played no role in [Plaintiff's] injuries." (*See* Doc. 34-2 at p. 6).

Plaintiff concedes that he did not read the G-Force's installation instructions. (*See* Doc. 36 at pp. 18–19). However, he points out that these were the *only* instructions included in the G-Force's packaging, and that Defendant "failed to provide any instructions, much less any warnings, pertaining to [the] use of the G-Force, its service life, maintenance, or inspection." (*See id.*).

In *East River Steamship Corporation v. Transamerica Delaval, Inc*, the Supreme Court recognized products liability "as part of the general maritime law." 476 U.S. 858, 865 (1986). The Court noted that "the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *Id.* (internal citations omitted). Since then, courts have "embraced § 402A of the Restatement (Second) of Torts as the best expression of the law of products liability under general maritime law." *Authement v. Ingram Barge Co.*, 977

9

F. Supp. 2d 606, 610 (E.D. La. 2013) (internal citations omitted). *See also Vickers v. Chiles Drilling Co.*, 822 F.2d 535, 538 (5th Cir. 1987) (applying § 402A to a maritime products liability claim).

"Under Section 402A, a product is defective only if it is 'unreasonably dangerous' to the ultimate user or consumer." *Authement*, 977 F. Supp.2d at 615 (*citing* Restatement (Second) of Torts § 402A(1)). "A product may be unreasonably dangerous due to lack of adequate instructions or warnings." *Authement*, 977 F. Supp.2d at 615 (*citing Reyes v. Wyeth Labs.*, 498 F.2d 1264, 1273–75 (5th Cir. 1974)). When a manufacturer knows or should know that danger may result from a particular use of its product, the failure to provide adequate warnings renders the product defective and unreasonably dangerous, even if there is no manufacturing or design defect in the product. *See Pavlides v. Galveston Yacht Basin, Inc.*, 727 F.2d 330, 338 (5th Cir. 1984). "In assessing what hazards are foreseeable, a manufacturer is held to the status of an expert." *Id.* (*citing Borel v. Fibreboard Paper Prod. Corp.*, 493 F.2d 1076 (5th Cir. 1973)).

Here, the Court concludes that there is a material dispute as to whether Defendant knew or *should have known* about the dangers posed by the G-Force, thus precluding summary judgment on this claim. Defendant argues that there is "no evidence of [it] having similar prior incidents [or] being warned of the possibility of the exact type of cable breaking, either of which would have placed [it] on notice of the risks of its action in this case." (*See* Doc. 34-2 at p. 5). However, a reasonable jury could find that as the manufacturer, Defendant should have known about or

reasonably foreseen the G-Force's possible hazards, and thus, should have provided a warning.

Defendant, however, cites several rulings of the U.S. Court of Appeals for the Fifth Circuit to argue that Plaintiff's failure to read the G-Force's installation instructions is fatal to his failure to warn claim. (*See* 34-2 at p. 6). Upon review, these cases concern a plaintiff's initial burden under the Louisiana Products Liability Act (LPLA), which features different standards and requirements than those imposed in general maritime law. For example, unlike the LPLA, general maritime law does not require an initial showing of causation between the manufacturer's inadequate warning and a user's injury. *See infra* at pp. 9–10; *see also Pavlides*, 727 F.2d at 338–41.

Furthermore, in the cases cited by Defendant, and unlike the case *sub judice*, a warning was provided, and the user declined to read it. While it is true that Plaintiff did not read the G-Force's *installation* instructions, the Court cannot conclude that he would not have read instructions or warnings about the G-Force's *use* had Defendant provided them. Simply put, Plaintiff cannot have read a warning that did not exist. Based on the evidence currently before the Court, under general maritime law, Defendant may have had an obligation to provide warnings to consumers about its product and failed to do so. Conversely, the evidence at trial may offer facts to show that Defendant had no such obligation. Accordingly, Defendant's request for summary judgment on Plaintiff's failure to warn claim is denied.

11

### C. Plaintiff's Lost Wages Claim

Finally, Defendant maintains that Plaintiff "does not have a lost wage claim" because he "testified in his deposition that he did not retire as a result of the December 3, 2023 accident" and "stipulated that [he] is not making a loss of earning capacity claim." (*See* Doc. 34-2 at p. 8).

In response, Plaintiff confirms that he "is not asserting a loss of earning capacity claim." (*See* Doc. 36 at p. 21). However, Plaintiff also confirms that he *is* seeking damages for wages lost while recovering from the accident and his resulting surgeries. (*See* Doc. 36 at p. 21). Under Section 924 of the Restatement (Second) of Torts, Plaintiff is entitled "to [seek] as damages the amount of earnings he has been prevented from acquiring up to the time of the trial." Thus, to the extent that Defendant seeks summary judgment in its favor on this category of damages, the request is denied.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's *res ipsa loquitor* claim be and is hereby **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that in all other respects, Defendant's Motion for Partial Summary Judgment be and is hereby **DENIED**.

Baton Rouge, Louisiana, this 18th day of May, 2023

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**